**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation, | ) ) ) | |
| | ) | Case No.  08-cv-02213 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Hon. William T. Hart |
| | ) | |
| HANDLER, THAYER & DUGGAN, LLC, an Illinois limited liability company; THOMAS J. HANDLER; STEVEN J. THAYER; JAMES M. DUGGAN; and GREGORY J. BERTSCH; | ) ) ) ) | Magistrate Judge Mason |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE STAY
PLAINTIFF'S AMENDED COMPLAINT**

---

Scott O. Reed (IL Bar No. 3127632)
Eric J. Marler (IL Bar No. 6276648)
REARDON GOLINKIN & REED
111 West Washington Street
Suite 707
Chicago, Illinois  60602
Phone:      312/855-3700
Fax:          312/855-1089
E-mail:      sreed@rgrlaw.com
               emarler@rgrlaw.com

*Attorneys for Plaintiff
Great American Insurance Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    The Pendency Of Underlying Litigation Against The Insured
         Does Not Make An Insurer's Declaratory Action Premature.. . . . . . . . . . . . . . . . . . . . 3

    II.    Counts I And II Present Issues That Are Separable From
         The Underlying Litigation And Should Proceed.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    III.   Equitable Factors Weigh Against A Dismissal Or Stay Of These Proceedings.. . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# **TABLE OF AUTHORITIES**

## **Cases**

*Allianz Ins. Co. v. Guidant Corp.*,
  355 Ill. App. 3d 721, 839 N.E.2d 113 (2nd Dist. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11, 15

*Allstate Ins. Co. v. Carioto*,
  194 Ill. App. 3d 767, 551 N.E.2d 382 (1st Dist. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*American Family Mut. Ins. Co. v. Savickas*,
  193 Ill.2d 378, 739 N.E.2d 445 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Atlanta Int'l Ins. Co. v. Atchison, Topeka & Santa Fe Ry. Co.*,
  938 F.2d 81 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bonnie Owen Realty, Inc. v. Cincinnati Ins. Co.*,
  283 Ill. App. 3d 812, 670 N.E.2d 1182 (5th Dist. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Continental Cas. Co. v. Southern Co.*,
  284 F. Supp. 2d 1118 (N.D. Ill. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Great American Ins. Co. v. Gross*,
  468 F.3d 199 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

*Great American Ins. Co. v. Wilmeth Law Firm*,
  Civil Action No. 4:06-cv-3210-RBH, 2007 WL 2815592 (D. S.C. Sept. 25, 2007). . . . . . . . . 14

*Grinnell Mut. Reins. Co. v. Friedrich*,
  79 Ill. App. 3d 1146, 399 N.E.2d 252 (5th Dist. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Illinois State Bar Assoc. Mut. Ins. Co. v. Coregis Ins. Co.*,
  355 Ill. App. 3d 156, 821 N.E.2d 706 (1st Dist. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Illinois State Med. Ins. Servs., Inc. v. Cichon*,
  258 Ill. App. 3d 803, 629 N.E.2d 822 (3rd Dist. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Long v. Shorebank Dev. Corp.*,
  182 F.3d 548 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Maryland Cas. Co. v. Peppers*,
  64 Ill. 2d 187, 355 N.E.2d 24 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Minnesota Lawyers Mut. Ins. Co. v. Larson*,
    No. 06-CV-074-WDS, 2007 WL 2688443 (S.D. Ill. Sept. 11, 2007).. . . . . . . . . . . . . . . 8, 9, 13

*Murphy v. Urso*,
    88 Ill.2d 444, 430 N.E.2d 1079 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rosewood Care Center, Inc. v. Caterpillar, Inc.*,
    226 Ill. 2d 559, 877 N.E.2d 1091 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rossi Distributors, Inc. v. Lavazza Premium Coffees Corp.*,
    No. 01 C 9271, 2002 WL 1611575 (N.D. Ill. July 17, 2002). . . . . . . . . . . . . . . . . . . . . . . . . 4

*St. Paul Fire & Marine Ins. Co. v. Estate of Bryant*,
    No. 01 C 112, 2001 WL 1104606 (N.D. Ill. Sept. 18, 2001). . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*State Farm Fire & Cas. Co. v. Shelton*,
    176 Ill. App. 3d 858, 531 N.E.2d 913 (1st Dist. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Those Certain Underwriters at Lloyd's v. Prof'l Underwriters Agency, Inc.*,
    364 Ill. App. 3d 975, 848 N.E.2d 597 (2nd Dist. 2006). . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 14

*Travelers Indem. Co. v. Bally Total Fitness Holding Corp.*,
    448 F. Supp. 2d 976 (N.D. Ill. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Western World Ins. Co. v. Majercak*,
    490 F. Supp. 2d 937 (N.D. Ill. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **Rules**

Federal Rule of Civil Procedure 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6

Federal Rule of Civil Procedure 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## PRELIMINARY STATEMENT

Defendants[1] have moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss or, in the alternative, stay Plaintiff Great American Insurance Company's ("Great American") Amended Complaint for Rescission and Other Relief (Dkt #14). They argue that the Amended Complaint presents issues which are either unripe or which "require the determination of ultimate issues of fact" presented in the Underlying Litigation[2] and, therefore, should be stayed or dismissed in favor of those underlying proceedings.

On May 20, 2008, during the presentment of Defendants' motion, this Court orally granted the motion as to Counts III (seeking declaratory relief based on the policy's definition of Professional Legal Services) and IV (same, based on the definition of Damages) without prejudice to Great American's right to later seek reinstatement of those counts. Although this Court indicated it would allow Great American to address that ruling in this brief, Great American will not do so and will not further comment on those counts in this Memorandum.

Rather, Great American believes that dismissal of, or any stay in proceedings on, Counts I (Rescission) and II (Reformation) would be inconsistent with on-point Illinois case law[3] and general principles of equity and judicial economy. Accordingly, and for the reasons explained more fully herein, Great American submits that Counts I and II must be allowed to proceed.

---

[1] Defendants are Handler Thayer & Duggan, LLC; Thomas J. Handler; Steven J. Thayer; James M. Duggan; and Gregory J. Bertsch.

[2] The Underlying Litigation, as defined in the Amended Complaint, consists of four suits collectively filed against Defendants in the Eastern District of Kentucky and the Eastern District of Wisconsin. *See* Amended Complaint for Rescission and Other Relief ("Am. Cmplt.") ¶ 6.

[3] The parties agree that the substantive law of Illinois governs the issues presented by the motion.

1

## **FACTS**

As an initial step, Great American believes that the essential facts and theories of the Underlying Litigation must be compared with those of Counts I and II.

Underlying Litigation: Plaintiffs below participated in an investment vehicle known as the Mare Lease Program ("Program") offered by the entity known as ClassicStar, LLC ("ClassicStar"). Defendants advised both ClassicStar and Program investors on the tax consequences of the Program. In their collective pleadings, the Underlying Plaintiffs claim that the statements Defendants made *to them* on those issues were false and/or misleading. *See, e.g.,* Am. Cmplt. at Exh. B., ¶¶ 388-389; Exh. C., ¶¶ 140-144; Exh. D., ¶¶ 279-286; and Exh. E., ¶¶ 31-51. Plaintiffs in the Underlying Litigation collectively seek from Defendants monetary damages (including punitive damages) and equitable relief based on the legal theories of professional malpractice; breach of contract; breach of fiduciary duty; fraud; negligent misrepresentation; aiding and abetting liability; violations of the Racketeer Influenced Criminal Organizations Act; conspiracy; and unjust enrichment. *See generally* Am. Cmplt. at Exh. B., ¶¶ 285-290, 387-402, and 411-412; Exh. C., ¶¶ 111-156, 171-182, 211-221; Exh. D., ¶¶ 164-177, 198-212, 242-245, 278-297; and Exh. E., ¶¶ 52-106.

Counts I and II: Great American provided Defendants with professional liability insurance on a yearly basis since October 6, 2001. Am. Cmplt., ¶ 14. The insurance policy at issue in this litigation (the "2006/07 Policy") provides Defendants with $5 million in coverage for the policy period of October 6, 2006 to October 6, 2007. Id. at ¶ 1. This amount of coverage is significant because it represents a *five-fold increase* over the $1 million in limits purchased by Defendants for each prior policy period. Id. at ¶ 14.

2

As a condition precedent to the 2006/07 Policy's issuance, Defendants submitted to Great American a renewal application averring that they knew of no "incidents, circumstances, errors, omissions or offenses which may result in a claim being made against" the firm or its attorneys. Am. Cmplt. at ¶ 31.  At the time of this statement's making, Defendants knew (but did not tell Great American) that the Program was under increasing scrutiny from both the Internal Revenue Service and investors.  Id. at ¶ 56.  Then, after the application was submitted, but before the 2006/07 Policy incepted, Defendants learned that ClassicStar and related parties had been sued over the Program; Defendants did not report this to Great American despite an obligation to do so.  Id. at ¶¶ 32, 34-35.  Finally, on the day the 2006/07 Policy was to incept, Defendants asked Great American to raise the limits of insurance from $1 million to $5 million, representing that the request was based only on the suggestion of a new partner at the firm.  Id. at ¶ 38.

Great American asserts that the misstatements and omissions by Defendants in these communications *to the insurer* were false and/or misleading at the time of their making.  Am. Cmplt. at ¶¶ 31, 36, 39.  Great American's position is that a reasonable attorney in Defendants' shoes would reasonably have believed that a claim could result against the attorney or his or her firm.[4]  Id. at ¶¶ 22-29, 34-35, 57.  Accordingly, Great American requests a judicial declaration permitting it to rescind (Count I) or, in the alternative, reform from $5 million to $1 million the limits of the 2006/07 Policy (Count II).  Id. at ¶¶ 53-69.

## ARGUMENT

## I.    THE PENDENCY OF UNDERLYING LITIGATION AGAINST THE INSURED DOES NOT MAKE AN INSURER'S DECLARATORY ACTION PREMATURE.

---

[4] Great American makes no comment on the factual basis for or merits of any such potential claim.

3

Defendants first argue that the Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction – *i.e.*, that there is no (and can be no) actual controversy between Great American and Defendants while the Underlying Litigation remains pending. Motion at 2. This position is untenable under these facts.

"[F]ederal courts are bound by a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" Great American Ins. Co. v. Gross, 468 F.3d 199, 206 (4th Cir. 2006), *citing* Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *see also* Rossi Distributors, Inc. v. Lavazza Premium Coffees Corp., No. 01 C 9271, 2002 WL 1611575 (N.D. Ill. July 17, 2002) (Kocoras, C.J.) (federal courts should only stay litigation "to avoid duplicative litigation and waste of judicial resources."). Indeed, "[f]ederal courts 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not.'" Gross, 468 F.3d at 206 (internal citation omitted).

Federal courts hold subject matter jurisdiction over a request for declaratory relief under 28 U.S.C. § 2201 so long as the dispute also presents an "actual case or controversy" under Article III. Continental Cas. Co. v. Southern Co., 284 F. Supp. 2d 1118, 1121 (N.D. Ill. 2003) (Bucklo, J.). That is, the dispute must be "definite and concrete, touching the legal relations of parties having adverse interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." Id.

Judge Bucklo's analysis in Continental Casualty is instructive. In that case, the insurers (led by primary carrier Continental) sought a judicial declaration absolving them from any payment obligation for various environmental and asbestos claims against the insured (Southern).

4

228 F. Supp. 2d at 1120.  Southern moved to dismiss on ripeness grounds, citing the pending

litigation against it elsewhere.  Id. at 1121.  In analyzing the matter, the Court observed that

"Southern has made various demands under the policies," including through the letters it had sent

to the insurers notifying them of, and demanding coverage for, the underlying claims.  Id. at

1121-22.  The letters, Judge Bucklo held, were "a definite indication that the Insurers were

actually expected to pay something" with respect to the underlying claims and thus presented a

justiciable controversy under Article III.  Id. at 1123; cf. Atlanta Int'l Ins. Co. v. Atchison,

Topeka & Santa Fe Ry. Co., 938 F.2d 81, 84 (7th Cir. 1991) (finding insureds' letter to be "a far

cry from a demand for payment, or even a threat to make a demand for payment").

    Here, Defendants have tendered the Underlying Litigation to Great American seeking

defense and indemnity coverage.[5]  Am. Cmplt., ¶¶ 44, 48-50.  The insureds' demands continue

both in the form of requests for payment of ongoing defense costs and otherwise; in fact, Great

American has been paying defense costs.[6]  Id. at ¶ 12.  Under Continental Casualty, these

demands are dispositive evidence of a justiciable controversy between the parties concerning the

enforceability of the 2006/07 Policy, as seen in Counts I and II.  That the Underlying Litigation is

pending is irrelevant; the dispute concerns whether Defendants were honest with Great American

in procuring the coverage, not the interpretation of any Policy language turning on or potentially

---

[5]  When reviewing a motion to dismiss based on a claimed lack of subject matter jurisdiction, a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.  Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999), citing Rueth v. United States EPA, 13 F.3d 227, 229 (7th Cir. 1993).

[6]  Defendants do not suggest (nor could they) that they have withdrawn, relented, or otherwise relinquished their demands, but even if they had, case law suggests that any such efforts would be ineffective for purposes of this analysis.  St. Paul Fire & Marine Ins. Co. v. Estate of Bryant, No. 01 C 112, 2001 WL 1104606 at *3 (N.D. Ill. Sept. 18, 2001) (Guzman, J.).

implicating the facts below. *See* <u>Estate of Bryant</u>, 2001 WL 1104606 at *3-4 (dismissing as

unripe insurer's request for declaration that defendant was "underinsured," which necessarily

depended on the amount of fault apportioned below). Counts I (Rescission) and II (Reformation)

should not be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.    COUNTS I AND II PRESENT ISSUES THAT ARE SEPARABLE FROM THE UNDERLYING LITIGATION AND SHOULD PROCEED.

"In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), [a

court must] accept the complaint's well-pleaded factual allegations as true, including the

inferences reasonably drawn from them. Generally, complaints in federal court are successful if

they contain a 'short and plain statement of the claim showing that the pleader is entitled to

relief' (Fed. R. Civ. P. 8(a)(2)), and will be dismissed only if the plaintiff 'failed to allege any set

of facts upon which relief may be granted.'" <u>Travelers Indem. Co. v. Bally Total Fitness Holding</u>

<u>Corp.</u>, 448 F. Supp. 2d 976, 980-81 (N.D. Ill. 2006) (Moran, J.) (internal citations omitted).

Under Illinois law, an insurer providing coverage on a duty-to-defend basis has three

alternatives if it questions whether a claim is covered under its policy – it can "(1) seek a

declaratory judgment regarding its obligations before or pending trial of the underlying action;

(2) defend the insured under a reservation of rights[;] or (3) refuse either to defend or to seek a

declaratory judgment." <u>Those Certain Underwriters at Lloyd's v. Prof'l Underwriters Agency,</u>

<u>Inc.</u>, 364 Ill. App. 3d 975, 982, 848 N.E.2d 597, 603-04 (2nd Dist. 2006). "As a general rule,

insurers are encouraged to resolve coverage problems by filing declaratory judgment actions,"

<u>Allstate Ins. Co. v. Carioto</u>, 194 Ill. App. 3d 767, 774, 551 N.E.2d 382, 386 (1st Dist. 1990)

(internal citation omitted), although such actions may be subject to dismissal or a stay when they

would "determine the ultimate question of the insured's liability or the facts upon which such liability is based." Bonnie Owen Realty, Inc. v. Cincinnati Ins. Co., 283 Ill. App. 3d 812, 819, 670 N.E.2d 1182, 1187 (5th Dist. 1996) (internal citation omitted). The cases caution against allowing this limited stay-exception to swallow the rule, for "[w]here the issues in an underlying suit and a declaratory judgment action are separable, deciding the question of coverage in a collateral proceeding prejudices no party," and the declaratory action may proceed. Murphy v. Urso, 88 Ill.2d 444, 455, 430 N.E.2d 1079, 1084 (1981). "The law is no different where the insurer seeks rescission." Underwriters at Lloyd's, 364 Ill. App. 3d at 983, 848 N.E.2d at 604.

The critical question thus is whether the facts at issue in the Underlying Litigation and those presented by these proceedings are "separable," as that term is judicially defined. "[T]he test [for analyzing separability] is whether collateral estoppel would operate. If the issues are substantially the same so that collateral estoppel would apply to control the resolution of issues in the underlying suit, declaratory judgment would be premature." Illinois State Med. Ins. Servs., Inc. v. Cichon, 258 Ill. App. 3d 803, 807, 629 N.E.2d 822, 826 (3rd Dist. 1994). This rule is designed to prevent the court in the declaratory action from making factual findings that could bind the insured to its detriment in the underlying action before it is resolved. *See generally* American Family Mut. Ins. Co. v. Savickas, 193 Ill.2d 378, 387, 739 N.E.2d 445, 451 (2000) ("There are three threshold requirements which must be met before the [collateral estoppel] doctrine may be applied. First, the issue decided in the prior adjudication must be identical with the one presented in the suit in question. Second, there must have been a final judgment on the merits in the prior adjudication. Third, the party against whom estoppel is asserted must have been a party or in privity with a party to the prior adjudication.")

A review of two recent decisions in Illinois declaratory actions – each of which considered an insured's obligation to disclose information when applying for a liability policy – demonstrates that the issues here are "separable" from those in the Underlying Litigation.

In <u>Minnesota Lawyers Mut. Ins. Co. v. Larson</u>, No. 06-CV-074-WDS, 2007 WL 2688443 (S.D. Ill. Sept. 11, 2007) (Stiehl, J.), an insured lawyer (Larson) was sued for legal malpractice over his failures to: (1) re-file a medical malpractice/wrongful death action against certain defendants who had earlier been dismissed; and (2) timely disclose experts against the sole remaining defendant. When the court in the medical malpractice suit barred Larson's experts, the client tried unsuccessfully to obtain replacement counsel. After that development, but before the client sued him, Larson submitted a renewal application to his professional liability insurer (Minnesota Lawyers) certifying that he "[was] not aware of any claims or circumstances that could result in claims or disciplinary actions that had not been reported to Minnesota Lawyers Mutual Insurance." 2007 WL 2688443 at *2, n.1.

When the client later sued Larson, he tendered the suit to Minnesota Lawyers for defense and indemnity. Minnesota Lawyers then filed its own suit against Larson, seeking a declaration of no coverage based on his failure to disclose in the renewal application the circumstances underlying the client's claims. Larson responded by moving to dismiss or stay the coverage litigation pending the resolution of the legal malpractice suit.

The court denied Larson's request, finding that:

The issues raised in [the client's] underlying action against Defendant Larson center on professional malpractice. ...The issues raised in the present declaratory judgment action, in contrast, center on whether Larson possessed knowledge of facts supporting potential malpractice claims against him, including those arising from his representation of [the client], at the time he obtained insurance coverage

from Minnesota Lawyers Mutual Insurance Company...

2007 WL 2688443 at *3.

Citing Murphy v. Urso, *supra*, the Larson court observed that declaratory actions should be stayed or dismissed in favor of an underlying action only where the two suits share facts that are sufficiently "similar" and "[s]uch declaratory judgment would control the underlying suit, thus prejudicing a party to that action." Id. The Larson court concluded that Larson had *not* made his showing of "substantial similarity," because:

> [e]ven if this Court decides that Larson possessed knowledge that his inaction could reasonably support claims against him for malpractice liability, such a ruling would have no bearing on the validity of [the client's] claims that Larson's inaction constituted legal negligence causing damage. In other words, this Court's declaration would neither bind the court considering the underlying action nor prejudice a party thereto.

> Id.

Allianz Ins. Co. v. Guidant Corp., 355 Ill. App. 3d 721, 839 N.E.2d 113 (2nd Dist. 2005) is equally on point. There, the insured, Guidant, manufactured a medical device called the Ancure Device, which had malfunctioned a number of times. Despite knowing of those incidents, Guidant failed to report them to the U.S. Food and Drug Administration. When the device's problems were ultimately brought to public light, the company found itself facing civil, criminal and regulatory actions.

Guidant tendered the matters to its insurers who, led by primary carrier Allianz, responded with a four-count declaratory complaint alleging, *inter alia*, that Guidant had "concealed and failed to disclose the status of the Ancure product defects and claims arising therefrom" in the course of its application for insurance. 355 Ill. App. 3d at 726, 839 N.E.2d at

9

117.  Guidant moved to stay the coverage litigation until the resolution of the underlying suits, arguing that "'there [was] a significant overlap between the [underlying matters] and this coverage action as to factual and legal issues – such that discovery into, or the determination of, these issues in the coverage case could' prejudice Guidant in the underlying claims."  355 Ill. App. 3d at 728, 839 N.E.2d at 118.

The trial court denied Guidant's motion for stay, observing that:

> I think the issue is, what was known at the time the applications were made, and whether there was, indeed, an awareness of potential liability or potential exposure or expense?  I think that that's [sic] a completely separate issue from whether there was negligence, whether this device was poorly made, or any other allegation that might exist in any of those [underlying claims].  The issue is awareness, and if that awareness existed, whether it was communicated or whether it should have been communicated in a reasonable relationship between an insured and a potential insurer."

> Id.

On appeal, Guidant argued that, *inter alia*, because the underlying litigation and the coverage litigation both involved claims of fraud, they "necessarily overlap[ped]."  355 Ill. App. 3d at 731-32, 839 N.E.2d at 121-22.  The court rejected this argument, finding that:

> although the fraud allegations in the Insurers' complaints and those in the underlying claims share a common title, *i.e.,* fraud, there is no overlap of ultimate facts... Contrary to Guidant's argument, the issue the Insurers raise with regard to fraud is not whether Guidant and its subsidiaries knew about the *alleged defects* with the Ancure Device before the insurance policies were sold.  Rather, the determinative issue as it relates to the Insurers' fraud claims is whether Guidant and its subsidiaries knew about *potential claims* arising from the use of the Ancure Device before the insurance policies were sold. ... A finding as to whether Guidant committed fraud during the insurance application process does not overlap with the issue of whether Guidant misrepresented the health risks of the Ancure Device to patients or the FDA."

> Id. (emphasis in original).

10

Applying <u>Larson</u> and <u>Guidant</u> leads to the conclusion that a stay or dismissal of Counts I and II would be inappropriate.  The Underlying Litigation seeks an adjudication of whether Defendants' representations <u>to their clients regarding the Program</u> were false and misleading. Those statements are <u>not</u> at issue in Counts I and II, which deal only with whether Defendants misrepresented or omitted facts <u>to Great American regarding the *potential* for malpractice claims</u> at the time they secured the 2006/07 Policy.

Defendants' argument that resolution of Counts I and II "necessarily involves [Defendants'] opinions and knowledge regarding the validity of [the] tax opinions" (Motion at 6) is directly undercut by <u>Guidant</u>, which teaches that an inquiry into the insured's knowledge of potential claims is materially different from an inquiry into the insured's knowledge of whether its own product was defective.  <u>Guidant</u>, 355 Ill. App. 3d at 731-32, 839 N.E.2d at 121-22.  The inquiry framed by Counts I and II is whether a reasonable attorney faced with the facts facing Defendants at the time their renewal application was submitted to Great American would have reasonably believed that they "may result in a claim being made" against the attorney or his or her firm.  *See* <u>Western World Ins. Co. v. Majercak</u>, 490 F. Supp. 2d 937, 941 (N.D. Ill. 2007) (Castillo, J.) (internal citations omitted).

The timing implicated by the two inquiries differs as well.  Plaintiffs in the Underlying Litigation seek to prove that Defendants knew that the statements made to those parties were misleading or incorrect *<u>at the time those statements were made</u>*.  Counts I and II, in contrast, involve the state of Defendants' knowledge *<u>at the time they applied for renewal coverage</u>*.  As above, this inquiry has no bearing on a court's findings in any part of the Underlying Litigation. *See* <u>Guidant</u>, 355 Ill. App. 3d at 735, 839 N.E.2d at 123 ("To prevail on their known loss claims,

11

the Insurers need not demonstrate whether the Ancure Device was unsafe or even whether

Guidant knew whether the Ancure Device was unsafe.  Instead, the Insurers need show only that

there was some exposure as a result of the Ancure Device."); *cf.* Bally Total Fitness Holding

Corp., 448 F. Supp.2d at 987 (staying insurance litigation that was based on *same financial

misstatements* as underlying securities fraud litigation.)

  The four cases cited by Defendants on this point (Motion at 9-10) are readily

distinguished.  First, three of the cases – Maryland Cas. Co. v. Peppers, 64 Ill. 2d 187, 355

N.E.2d 24 (1976); State Farm Fire & Cas. Co. v. Shelton, 176 Ill. App. 3d 858, 531 N.E.2d 913

(1st Dist. 1988); and Grinnell Mut. Reins. Co. v. Friedrich, 79 Ill. App. 3d 1146, 399 N.E.2d 252

(5th Dist. 1979) – involve the application of an "intentional injury" exclusion, which is by its

nature determined by underlying litigation findings.  In each case, the insurer sought a declaration

of no coverage based on the ground that the insured's conduct was "intentional" or "willful."

Peppers, 64 Ill. 2d at 196, 355 N.E.2d at 29; Shelton, 176 Ill. App. 3d at 861, 531 N.E.2d at 915;

Friedrich, 79 Ill. App. 3d at 1146, 399 N.E.2d at 253.  Each court held that determining this issue

in the coverage suit would have the collateral effect of determining liability in the underlying

litigation.  Peppers, 64 Ill. 2d at 197, 355 N.E.2d at 30; Shelton, 176 Ill. App. 3d at 867-68, 531

N.E.2d at 920; Friedrich, 79 Ill. App. 3d at 1149-50, 399 N.E.2d at 255.  Those concerns are not

present here.  As for the remaining case – Illinois State Bar Assoc. Mut. Ins. Co. v. Coregis Ins.

Co., 355 Ill. App. 3d 156, 821 N.E.2d 706 (1st Dist. 2004) – even Defendants admit that it

involved a situation where "the underlying action was in fact resolved prior to the determination

by the court of the issue of rescission."  Motion at 10.  "Lesson Number One in the study of law

is that general language in an opinion must not be ripped from its context to make a rule far

broader than the factual circumstances which called forth the language." <u>Rosewood Care Center, Inc. v. Caterpillar, Inc.</u>, 226 Ill. 2d 559, 572, 877 N.E.2d 1091, 1098 (2007), *quoting* <u>F.D.I.C. v. O'Neil</u>, 809 F.2d 350, 354 (7th Cir. 1987).

The matters at issue in Counts I (Rescission) and II (Reformation) of the Amended Complaint are wholly separable from those at issue in the Underlying Litigation.[7]  Defendants should be directed to answer those counts so that further proceedings can take place thereon.

## III. EQUITABLE FACTORS WEIGH AGAINST A DISMISSAL OR STAY OF THESE PROCEEDINGS.

In addition to the legal justifications detailed above, there are several equitable factors that weigh against a stay or dismissal of these proceedings.

First, as noted, the Underlying Litigation in no way addresses Great American's claims, and the factual matters at issue here will not be addressed during the course of those proceedings. *See* <u>Gross</u>, 468 F.3d at 208 ("Whether [the insured's representative] lied when he completed the Proposal Forms, whether Great American's underwriter relied on his lies, and whether they were material to the risk Great American undertook when it issued the Policy and, later, doubled its liability limit, are questions of fact and law that will not be resolved in any other action."); *see also* <u>Larson</u>, 2007 WL 2688443 at *3 ("Even if this Court decides that Larson possessed knowledge that his inaction could reasonably support claims against him for malpractice liability, such a ruling would have no bearing on the validity of [the client's] claims that Larson's inaction

---

[7]  While an adverse outcome for Defendants in the Underlying Litigation might give rise to *additional* coverage issues under the Policy (including, but not limited to, those identified in Counts III and IV of the Amended Complaint), a successful defense of the Underlying Litigation would not answer whether Defendants misrepresented *to Great American* facts material to the insurer's underwriting decision in connection with their application for insurance.

constituted legal negligence causing damage.").  Great American, like any other plaintiff, has the right to have its claims heard in a timely manner and in the forum of its appropriate choosing. There is no valid reason for this Court to limit Great American's access to the decision-making process, especially since Defendants have presented no evidence (and can present no evidence) of any particularized harm that would result from allowing Counts I and II to proceed.

Second, a stay would severely prejudice Great American by forcing its legitimate coverage dispute with its insureds to the sidelines for an unspecified period of time, and with no guaranteed savings of judicial resources.  *See* Great American Ins. Co. v. Wilmeth Law Firm, Civil Action No. 4:06-cv-3210-RBH, 2007 WL 2815592 at *4 (D. S.C. Sept. 25, 2007) ("Importantly, Great American may be entitled to rescind the Policy regardless of whether the Wilmeth Defendants ultimately prevail on the liability issue in state court.  There is also no guarantee that the facts necessary for Great American to prove its rescission claim will be brought out in the state action.").  During the May 1 hearing on Great American's Motion for Leave to File Amended Complaint (Dkt #8) this Court observed that, as a general principle, it is preferable for coverage litigation to proceed concurrent with the underlying litigation so that the parties "know where they stand."  Although Great American may be entitled to suspend its payment of defense costs during the pendency of this action, *see* Underwriters at Lloyd's, *supra*, 364 Ill. App. 3d at 983, 848 N.E.2d at 504, it has chosen not to put its own interests before those of its insured.  Rather, the insurer desires this matter to move forward expeditiously so that *all* parties implicated by the coverage dispute – including the underlying Plaintiffs – can better understand the nature of any available insurance coverage.

Conversely, there is no real potential for prejudice to Defendants.  If Great American

14

prevails, then Defendants have lost nothing to which they were otherwise entitled.  Although

Defendants claim they would be prejudiced by anticipated discovery requests from Great

American seeking their client files,[8] that claim is wholly speculative at this point and, in any

event, those concerns could be addressed through a protective order or other procedural device.

*See* Guidant, 355 Ill. App. 3d at 735.

## **CONCLUSION**

For all of the reasons detailed above, Defendants' motion must be denied and Counts I

and II must be allowed to proceed.

WHEREFORE, Great American respectfully requests that this Court enter an Order:

1.     denying Defendants' Motion to Dismiss or Stay as to Counts I (Rescission) and II

       (Reformation) of the Amended Complaint; and

2.     awarding Great American any other relief it deems appropriate.


Dated: June 10, 2008                                        /s/ Eric J. Marler

                                             Scott O. Reed (IL Bar No. 3127632)
                                             Eric J. Marler (IL Bar No. 6276648)
                                             REARDON GOLINKIN & REED
                                             111 West Washington Street
                                             Suite 707
                                             Chicago, Illinois  60602
                                             Phone:        312/855-3700
                                             Fax:          312/855-1089
                                             E-mail:       sreed@rgrlaw.com
                                                           emarler@rgrlaw.com

                                             *Attorneys for Plaintiff Great American*
                                             *Insurance Company*

---

[8]  Because the client, and not the attorney, holds the privilege, any information disclosed in the course of
discovery in the Underlying Litigation presumably would be discoverable by Great American here.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GREAT AMERICAN INSURANCE )
COMPANY, an Ohio corporation, )
                                 )
                 Plaintiff, )     Case No.  08-cv-02213
                                 )
vs. )
                                 )     Hon. William T. Hart
HANDLER, THAYER & DUGGAN, LLC, an )
Illinois limited liability company; THOMAS J. )     Magistrate Judge Mason
HANDLER; STEVEN J. THAYER; JAMES M. )
DUGGAN; and GREGORY J. BERTSCH; )
                                 )
                 Defendants. )

## NOTICE OF FILING

To:     Richard A. Del Giudice, Esq.         Katherine Smith Dedrick
         David S. Americus, Esq.            Childress Duffy Goldblatt, Ltd.
         Earl E. Farkas, Esq.               515 North State Street
         Gozdecki and Del Giudice        Suite 2200
         221 North LaSalle Street        Chicago, IL 60610
         Suite 2200
         Chicago, IL 60601            Email: kdedrick@cdglawyers.com

         Email: r.delgiudice@gozdel.com
                d.americus@gozdel.com
                e.farkas@gozdel.com

       PLEASE TAKE NOTICE that on June 10, 2008, we filed **Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or in the Alternative Stay Plaintiff's Amended Complaint**, with the Clerk of the Court using the CM/ECF system, thereby causing a copy to be served upon you.

Dated: June 10, 2008                     Respectfully submitted,

                                           /s/ Eric J. Marler

                                       Scott O. Reed (IL Bar No. 3127632)
                                       Eric J. Marler (IL Bar No. 6276648)
                                       REARDON GOLINKIN & REED
                                       111 West Washington Street
                                       Suite 707
                                       Chicago, Illinois  60602

Phone:      312/855-3700
Fax:        312/855-1089
E-mail:     sreed@rgrlaw.com
            emarler@rgrlaw.com

*Attorneys for Plaintiff Great American
Insurance Company*


<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies under penalty of perjury that on June 10, 2008, I electronically filed **Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or in the Alternative Stay Plaintiff's Amended Complaint**, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:


Richard A. Del Giudice, Esq.          Katherine Smith Dedrick
David S. Americus, Esq.               Childress Duffy Goldblatt, Ltd.
Earl E. Farkas, Esq.                  515 North State Street
Gozdecki and Del Giudice              Suite 2200
221 North LaSalle Street              Chicago, IL 60610
Suite 2200
Chicago, IL 60601                     Email: kdedrick@cdglawyers.com


Email: r.delgiudice@gozdel.com
       d.americus@gozdel.com
       e.farkas@gozdel.com


thereby serving the same upon them.


        /s/ Eric J. Marler
Eric J. Marler (IL Bar No. 6276648)